**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------

IN RE: KWOK,
    *Debtors*

------------------------------------------

ACA CAPITAL GROUP LTD., *et al.*,
    *Appellants*,

        v.

LUC A. DESPINS,
    *Ch. 11 Trustee-Appellee.*

------------------------------------------

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

BANKR. NO. 22-50073 (JAM)
*Chapter 11*


CIVIL NO. 3:25-CV-747 (KAD)




JANUARY 8, 2026

**MEMORANDUM OF DECISION RE: APPELLANTS' MOTIONS FOR LEAVE TO APPEAL (ECF NOS. 2, 36)**

Kari A. Dooley, United States District Judge:

These consolidated appeals arise out of an adversary proceeding commenced in the United States Bankruptcy Court in the District of Connecticut by Chapter 11 Trustee Luc. A. Despins (the "Trustee"), appointed in the Chapter 11 case of Ho Wan Kwok (the "Debtor"). *Despins v. ACA Capital Group Ltd.*, No. 24-ap-5249 (hereinafter, the "Adversary Proceeding"). The Assorted Defendants[1] and G-Club Defendants[2] named in the Adversary Proceeding (collectively, "Defendants" or "Appellants") each seek leave to appeal the Bankruptcy Court's single ruling denying their respective Motions to Dismiss (the "MTD Order"). The Trustee, in an omnibus

---

[1] The Court accepts the categorical labels used by the Bankruptcy Court in the MTD Order. The Assorted Defendants are as follows: (1) ACA Capital Group, Ltd.; (2) Celestial Tide Limited; (3) G Fashion (CA); (4) G Fashion Hold Co A Limited; (5) G Fashion Hold Co B Limited; (6) G Fashion International Limited; (7) GFashion Media Group Inc.; (8) GF IP, LLC; (9) GF Italy, LLC; (10) GFNY, Inc.; (11) Hamilton Capital Holding Limited; (12) Hamilton Investment Management Limited; (13) Hamilton Opportunity Fund SPC; (14) Himalaya Currency Clearing Pty Ltd.; (15) Himalaya International Clearing Limited; (16) Himalaya International Financial Group Limited; (17) Himalaya International Payments Limited; (18) Himalaya International Reserves Limited; (19) Major Lead International Limited; and (20) Mr. William Je.

[2] The G-Club Defendants are G Club International Limited and G Club Operations LLC.

brief, opposes the Motions for Leave to Appeal.  *See* ECF No. 38.  The Assorted Defendants and

G-Club Defendants filed separate reply briefs.  *See* ECF No. 41 (G-Club Defendants); ECF No.

42 (Assorted Defendants).  For the reasons set forth below, the Motions for Leave to Appeal are

**DENIED**.

**Facts and Procedural History**

The parties' familiarity with the underlying bankruptcy proceedings is assumed.

On February 14, 2024, the Trustee commenced the Adversary Proceeding against dozens

of foreign and domestic entities and their nominal owners, alleging that these entities are each alter

egos of and/or beneficially owned by the Debtor, and that therefore, their ownership interests and

assets should be turned over to the Estate.  *See* Compl., Adv. Proc., ECF No. 1.  On October 29,

2024, the Trustee filed the operative Amended Complaint.  *See* Am. Compl., Adv. Proc., ECF No.

108.  The Assorted Defendants and G-Club Defendants collectively make up twenty-two of the

twenty-five total Defendants named in the Amended Complaint.[3]  *See id.*

The precise relief sought by the Trustee against each corporate Defendant depends on

where the corporate entity is domiciled.  More specifically, against each "Foreign Entity

Defendant,"[4] the Trustee asserts a single claim pursuant to 11 U.S.C. §§ 541, 542, 544 seeking:

(a) a declaratory judgment that the Foreign Entity Defendant (and, where appropriate, its legal

owner) holds its property as a bare trustee for its true beneficial owner, the Debtor; and (b) an order

requiring that any ownership interests in each Foreign Defendant Entity and its property be turned

---

[3] Defendants Mei Guo, Rule of Law Foundation III, Inc., and Rule of Law Society IV, Inc. did not file motions to dismiss the Amended Complaint.

[4] The Foreign Entity Defendants named in the Amended Complaint are: ACA Capital Group, Ltd.; Celestial Tide Limited; G Club International; G Fashion International Limited; Hamilton Capital Holding Limited; Hamilton Investment Management Limited; Hamilton Opportunity Fund SPC; Himalaya Currency Clearing Pty Ltd.; Himalaya International Clearing Limited; Himalaya International Financial Group Limited; Himalaya International Payments Limited; Himalaya International Reserves Limited; and Major Lead International Limited.

over to the Estate.  Against each "Domestic Entity Defendant,"[5] the Trustee asserts two claims pursuant to 11 U.S.C. §§ 541, 542, 544: (1) a declaratory judgment that each Domestic Entity Defendant is an alter ego of the Debtor, and an order requiring the turnover of each Domestic Entity Defendant's assets to the Trustee; and (2) a declaratory judgment that the Debtor is the equitable owner of each Domestic Entity Defendant and its assets, and an order requiring that the ownership interests of each Domestic Entity Defendant and its property be turned over to the Estate.[6]

On November 22, 2024, the Assorted Defendants and G-Club Defendants filed their Motions to Dismiss the Amended Complaint.  *See* Assorted Defs. MTD, Adv. Proc., ECF No. 114; G-Club Defs. MTD, Adv. Proc., ECF No. 116.  Broadly speaking, both sets of Defendants sought dismissal of the Amended Complaint for: (1) lack of standing on the part of the Trustee; (2) lack of personal jurisdiction (as to the Foreign Defendant Entities and Mr. Je only); (3) insufficiency of process (as to G Club International only); and (4) failure to state alter ego or beneficial ownership claims under California, Delaware, Puerto Rico, and/or English law, as applicable.  *See id.*

On April 23, 2025, the Bankruptcy Court issued the MTD Order, denying both Motions to Dismiss in their entirety.  *See* MTD Order, Adv. Proc., ECF No. 133.  As relevant here, in resolving Defendants' threshold jurisdictional arguments regarding standing and personal jurisdiction, the Bankruptcy Court concluded that: (a) the Trustee has standing to assert his claims because alter ego is a general claim of creditors at large, and because any and all judgment creditors could bring

---

[5] The Domestic Entity Defendants named in the Amended Complaint are: G Club Operations, G Fashion (CA); GFashion Media Group Inc.; GF IP, LLC; GF Italy, LLC; and GFNY, Inc.

[6] For clarity, the G-Club Defendants are comprised of one Foreign Defendant Entity (G Glub International) and one Domestic Defendant Entity (G Club Operations). Similarly, the Assorted Defendants include both Foreign and Domestic Entities, such that both Motions to Dismiss raised issues applicable to both groups of Defendants.

a beneficial ownership claim in an effort to collect on their debt; (b) personal jurisdiction may be established where a defendant is an alter ego of a person over whom the court otherwise has personal jurisdiction (here, indisputably, the Debtor), and taken as true, the Trustee's allegations establish *prima facie* alter ego claims against the Foreign Entity Defendants thus giving rise to the Court's personal jurisdiction over them; and (c) the Bankruptcy Court has personal jurisdiction over Defendant William Je because, taken as true, the Trustee's allegations establish a *prima facie* case that Defendant Je purposefully directed himself towards the United States, and the injuries that the Trustee seeks to redress in this Adversary Proceeding relate to that purposeful direction. Turning to sufficiency of the allegations supporting the Trustee's claims, the Bankruptcy Court next determined that, as to the Assorted Defendants, the Amended Complaint plausibly asserts alter ego and/or beneficial ownership claims under, as applicable, California, Delaware, and/or English law, and otherwise seeks plausible relief against Celestial Tide, Major lead, and William Je, as nominal owners of certain of the Foreign Entity Defendants.  As to the G-Club Defendants, the Bankruptcy Court concluded that the Amended Complaint plausibly alleges alter ego under Puerto Rico law and beneficial ownership under English law.

On May 7, 2025, the Assorted Defendants and G-Club Defendants timely filed the instant Motions for Leave to Appeal the MTD Order (the "Motions" or "MLAs").[7]

**Standard of Review**

Districts courts have jurisdiction to hear appeals from "final judgments, orders, and decrees . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy

---

[7] Notwithstanding that the Assorted Defendants and G-Club Defendants assert varying "questions presented," on appeal, Appellants collectively challenge the Bankruptcy Court's determinations as to standing, personal jurisdiction, and the adequacy of the Trustee's beneficial ownership and/or alter ego claims.  Thus, the Court herein addresses those core grounds for interlocutory appeal, and to the extent necessary, further specifically addresses any unique arguments separately asserted either by the Assorted Defendants or the G-Club Defendants.

judges." 28 U.S.C. § 158(a).[8] "The decision as to whether to grant leave to appeal an interlocutory

order of a bankruptcy court is committed to the discretion of the district court." *Osuji v. U.S. Bank,*

*N.A.*, 285 F. Supp. 3d 554, 557 (E.D.N.Y. 2018) (citing *In re Kassover*, 343 F.3d 91, 94 (2d Cir.

2003)).  The standard set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from

district courts to courts of appeals, similarly governs such interlocutory appeals from bankruptcy

courts to district courts.  *In re Quigley Co.*, 323 B.R. 70, 77 (S.D.N.Y. 2005) ("[C]ourts in this

Circuit have invariably held[] all appeals governed by Section 158(a)(3) . . . should refer to the

standards articulated by Section 1292(b) to determine whether leave to appeal shall be granted.")

(citation omitted).  Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable
> under this section, shall be of the opinion that such order involves a controlling
> question of law as to which there is substantial ground for difference of opinion and
> that an immediate appeal from the order may materially advance the ultimate
> termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

Accordingly, appellants must establish that "the order (1) involves a controlling question

of law (2) as to which there is a substantial ground for difference of opinion, and (3) an immediate

appeal from the order may materially advance the ultimate termination of the litigation." *Osuji*,

285 F. Supp. 3d at 558 (citation omitted); *see also In re Salvatore*, No. 3:18-CV-1429 (SRU), 2019

WL 1284815, at *1 (D. Conn. Mar. 20, 2019).

The first inquiry is satisfied if the reversal of the bankruptcy court's order would (1)

terminate the action; or (2) materially affect the outcome of the litigation. *See Osuji*, 285 F. Supp.

3d at 558 (citing *Buckskin Realty Inc. v. Greenberg*, 552 B.R. 40, 44 (E.D.N.Y. 2016)).  "The

question of law must be a pure question that does not require resort to the case docket for study."

---

[8]  The parties do not dispute that this case presents an appeal of an interlocutory order.

*In re Salvatore*, 2019 WL 1284815 at *2. The second inquiry is satisfied where there is either conflicting authority on the issue or the issue is particularly difficult and of first impression in the Second Circuit. *Osuji*, 285 F. Supp. 3d at 558. Alternatively, there must be "a genuine doubt as to whether the bankruptcy court applied the correct legal standard . . . [M]erely claiming that the bankruptcy court's decision was incorrect is insufficient to establish substantial ground for difference of opinion." *In re Salvatore*, 2019 WL 1284815 at *2. The third inquiry "is satisfied when the appeal promises to advance the time for trial or to shorten the time required for trial." *Id.* Further, district courts have "unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of [Section] 1292(b) are met." *Buckskin Realty Inc.*, 552 B.R. at 44.

**Discussion**

Appellants contend that an interlocutory appeal is appropriate here because, principally: (1) they have raised pure controlling issues of law regarding standing, personal jurisdiction, and the standards for alter ego and beneficial ownership claims; (2) there are substantial grounds for difference of opinion as to each of those issues, insofar as the MTD Order conflicts with prevailing case law; and (3) a successful appeal would materially advance termination of the Adversary

Proceeding.[9]  In response, the Trustee argues that: (a) the MTD Order does not involve controlling questions of law; (b) Appellants' mere displeasure with the MTD Order does not establish a substantial ground for difference of opinion; (c) reversal of the MTD Order would not terminate the Adversary Proceeding; and (d) regardless, the Court should exercise its "unfettered discretion" to deny interlocutory review.  The Court agrees with the Trustee that interlocutory appeal is not warranted.

As an initial matter, several of the issues that Appellants seek to raise on appeal do not appear to be pure, controlling questions of law.[10]  Rather, the Court agrees with the Trustee that these issues, including those regarding personal jurisdiction over the Foreign Entity Defendants and Mr. Je, as well as the sufficiency of the Trustee's alter ego and/or beneficial ownership claims, are ultimately fact-based determinations and necessarily involve an assessment of the allegations set forth in the Amended Complaint.  Such questions are not suited for interlocutory review.  *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018)

---

[9]  The G-Club Defendants further argue that the Bankruptcy Court lacked subject matter jurisdiction, insofar as only the district court overseeing the Debtor's criminal case can adjudicate the ownership of G-Club's assets, which are the subject of forfeiture proceedings.  The G-Club Defendants insist that despite not having raised this issue in the Bankruptcy Court, it is still appropriately raised on appeal, because it implicates the Court's subject matter jurisdiction. Accepting, without deciding, that the G-Club Defendants may be correct in this regard, the G-Club Defendants have not adequately demonstrated how or why the Bankruptcy Court is stripped of jurisdiction to adjudicate the Trustee's alter ego claims simply because the Government in connection with the Debtor's criminal case is seeking forfeiture of the same alter ego's assets pursuant to 21 U.S.C § 853.  There is no question that, where available under governing state law, a trustee in bankruptcy may pursue alter ego claims in order to identify estate assets.  *See In re Tronox Inc.*, 549 B.R. 21, 42 (S.D.N.Y. 2016).  And it follows, again without question, that bankruptcy courts may adjudicate those claims.  *See id.* at 39.  This is, of course, the *sine qua non* of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction . . . when the [] court lacks the statutory or constitutional power to adjudicate it.").  While proceedings in the Southern District of New York may impact the ultimate availability of the assets for the Estate, or raise additional issues to be adjudicated, these possibilities do not defeat the Bankruptcy Court's subject matter jurisdiction in the first instance. Indeed, the Trustee's ability to assert an interest in the assets subject to forfeiture presumably hinges on a declaration— like the one sought through the Adversary Proceeding—that the G-Club Defendants are alter egos of and/or beneficially owned by the Debtor.  And the interplay between the *in rem* forfeiture proceedings and this Adversary Proceeding is, as yet, undetermined.

[10]  Even if some of the questions raised by Appellants on appeal are controlling legal issues, the Court has still declined to take this interlocutory appeal: (a) insofar as Appellants have nevertheless failed to demonstrate how the resolution of those issues would materially advance termination of the Adversary Proceeding; and (b) due to its "unfettered discretion" to deny interlocutory review.

("a question that turns on the . . . assessment of the pleadings, is not a pure question of law suited for interlocutory appeal.") (internal quotation marks and citation omitted). Indeed, notwithstanding Appellants' claim to the contrary, it is clear in Appellants' briefing on the instant Motions that interlocutory review of the MTD Order would unquestionably require the Court to extensively study the record below, to include, *inter alia*, ascertaining: (a) the applicable alter ego and/or beneficial ownership theories advanced by the Trustee in the Amended Complaint; (b) the scope of the Trustee's allegations as to Mr. Je's purposeful conduct directed at the United States; and (c) the adequacy of the allegations describing the relationships between the Foreign Entity Defendants and the Debtor. *See, e.g.*, *In re Penado*, No. 24-CV-5935 (JMA), 2024 WL 4107252, at *4 (E.D.N.Y. Sept. 5, 2024) (declining interlocutory review where reviewing court would be required "to study the record to assess the factual components of [a]ppellant's underlying motions"). And of course, this is precisely the analysis required of and conducted by the Bankruptcy Court in the MTD Order.

Moreover, even if Appellants raise one or more purely legal questions (*e.g.*, standing, and the proper application of Puerto Rico and/or English law), it remains unclear to the Court precisely how, given the complex and interwoven arguments advanced by Appellants, an appeal at this juncture would *materially* advance termination of the underlying Adversary Proceeding. And nor would the Court, given its "unfettered discretion," grant the instant motion "in part" so as to extract those issues that might, arguably, be appropriate for interlocutory review. Ultimately, Appellants have failed to demonstrate how an appeal at this stage, if successful, would obviate the complicated factual and legal issues that otherwise remain to be adjudicated at the Bankruptcy Court before final judgment, including those involving the three Defendants that did not seek dismissal of the

Amended Complaint.[11]  *See Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 137 (S.D.N.Y. 2023).  Under such circumstances, "the litigation may be most expeditiously advanced by proceeding in the ordinary course to judgment, and permitting a single round of appellate review on a complete record."  *Id.* (citation omitted).  Nor would proceeding in the ordinary course foreclose Appellants from raising these same issues in connection with an appeal taken as of right from the Bankruptcy Court's final determination, *if Appellants do not prevail*, whether by summary judgment or after trial.  At that point, the parties, and the Court, will have the added benefit of a fully developed factual record.[12]  In short, though the Court recognizes that Appellants have raised certain novel and difficult questions in seeking dismissal of the Amended Complaint, "certification is not intended as a vehicle to provide early review of difficult rulings in hard cases." *S.E.C. v. Gruss*, No. 11-CV-2420 (RWS), 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012) (citation omitted).  By contrast, "only exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," and the Court remains mindful of the foundational principle that "interlocutory appeals are strongly disfavored in federal practice."  *Osuji*, 285 F. Supp. 3d at 558.

Lastly, the Court observes that its "unfettered discretion" to deny certification "can be for 'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal.'" *In re Facebook*, 986 F. Supp. 2d at 530 (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).  Accordingly, the Court is further denying interlocutory review

---

[11]  The Trustee has indicated that, in response to any reversal of the MTD Order, he would, as appropriate, seek leave to further amend the Amended Complaint to replead his claims, address the issues that led to reversal on appeal, and/or plead an alternate claim – thereby prolonging, not expediting the litigation.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014) ("[t]he Second Circuit regularly denies interlocutory appeals at such preliminary stages where, as here, the appeal could at most lead only to a remand for repleading.").

[12]  As this Court has previously observed, Appellants may yet prevail on the merits in the Adversary Proceeding, which would render review of the MTD Order a meaningless exercise and an unnecessary expenditure of resources – for the Trustee, Appellants, and the Court.

here based on a concern that a reversal, in whole or in part, of the MTD Order might inject considerable confusion and cause further delay to an already complex Adversary Proceeding. This concern is equally present, perhaps more so, with respect to the vast procedural landscape underlying the Debtor's main bankruptcy case, as well as the hundreds of other adversary proceedings involving many of the same issues as are at issue here.[13]

**Conclusion**

For the foregoing reasons, Appellants' Motions for Leave to Appeal are **DENIED**. The Clerk of Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of January 2026.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[13] Appellants argue that they "should not be prejudiced or blocked from access to normal statutory procedures, including the procedure for interlocutory review, because the Trustee has decided to flood the Bankruptcy Court with over three hundred adversary proceedings." *See* G Club Reply, ECF No. 41 at 8. This argument presupposes that interlocutory appeal is an entitlement to which Appellants are being denied due to the sheer volume of adversary proceedings in the Bankruptcy Court. As discussed above, this is a flawed premise. And to the extent the argument is further premised on an implied accusation that the Trustee is not acting in good faith or is pursuing frivolous claims, the record does not support such a conclusion.